IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FELIX ALIKSA, individually, and as administrator of the estate of Ersila M. Aliksa, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:17CV428 |
| NORTH CAROLINA RAILROAD CO., CSX TRANSPORTATION, INC., CSX CORPORATION, NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK, MOORE COUNTY NORTH CAROLINA, and MOORE COUNTY, NORTH CAROLINA PLANNING & TRANSPORTATION DEPARTMENT, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before this court is a Motion to Dismiss for Lack of Jurisdiction filed by Defendants Moore County, North Carolina and Moore County, North Carolina Planning and Transportation Department, (collectively the "Moore County Defendants"), (Doc. 25), which Moore County Defendants filed a supportive brief thereof, (Doc. 26). Also before this court is a Motion to Dismiss for Failure to State a Claim filed by Moore County Defendants, (Doc. 27), which Moore County Defendants filed a supportive brief thereof, (Doc. 28). Plaintiff Felix Aliksa

("Plaintiff") filed a response in opposition to both motions, (Doc. 29), and Moore County Defendants replied, (Doc. 30). For the reasons stated herein, this court will grant the Motion to Dismiss for Lack of Jurisdiction and deny as moot the Motion to Dismiss for Failure to State a Claim.

I.  **FACTUAL BACKGROUND**

The allegations of the complaint, viewed in the light most favorable to Plaintiff, the nonmoving party, are as follows:

On December 3, 2015, Ersila M. Aliksa ("Decedent") was traveling westbound on Pinebluff Lake Road in Moore County, North Carolina, toward United States Department of Transportation Crossing No. 630807X ("the Pinebluff Lake Road Crossing"). (Complaint ("Compl.") (Doc. 3) ¶¶ 1, 21-22.) At the same time, an Amtrak train was headed northbound towards the same crossing. (Id. ¶ 22.) Tall rail cars were parked on both sides of the crossing, on a second set of tracks. (Id.) Plaintiff's view of the crossing was allegedly obstructed by said tall rail cars and by trees surrounding the Pinebluff Lake Road Crossing. (Id. ¶¶ 21-22.) Additionally, the tall rail cars allegedly caused safety features of the crossing to malfunction, such that "the crossing gates failed to fully close to stop vehicular traffic upon a train's approach" and "failed to provide the functions and warning for which it was designed, and

as such, provided inadequate warning of an approaching train." (Id. ¶ 21.)

As Decedent traversed the crossing, her car was struck on the driver's side by an Amtrak train. (Id. ¶ 22.) Upon impact, Decedent's car was crushed between the train and the tall rail cars, causing her death. (Id.) Plaintiff, as administrator of Decedent's estate, raises tort claims against Moore County Defendants under North Carolina law. (Id. ¶¶ 1-3, 280-85.)

II. **LEGAL STANDARDS**

Moore County Defendants' Motion to Dismiss for Lack of Jurisdiction asserts governmental immunity against Plaintiff's North Carolina tort claims and invokes both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) as a basis for dismissal. (Doc. 25.) In cases where state sovereign or governmental immunity is asserted, "[a] motion to dismiss based on sovereign immunity is a jurisdictional issue." Simmons v. Corizon Health, Inc., 122 F. Supp. 3d 255, 268 (M.D.N.C. 2015) (citing M. Series Rebuild, LLC v. Town of Mount Pleasant, Inc., 222 N.C. App. 59, 63, 730 S.E.2d 254, 257 (2012)). When a state supreme court "has spoken neither directly nor indirectly on the particular issue" at hand, a federal court must "predict how [the state supreme] court would rule if presented with the issue." See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005) (citation omitted). While undecided by the

Supreme Court of North Carolina, the North Carolina Court of
Appeals has stated that "the general rule is that sovereign
immunity presents a question of personal jurisdiction, not
subject matter jurisdiction." Green v. Kearney, 203 N.C. App.
260, 265, 690 S.E.2d 755, 760 (2010); see also Meherrin Indian
Tribe v. Lewis, 197 N.C. App. 380, 384, 677 S.E.2d 203, 207
(2009) ("An appeal of a motion to dismiss based on sovereign
immunity presents a question of personal jurisdiction rather
than subject matter jurisdiction.").[1] Accordingly, this court

---

[1] As recently noted by another court in this district:

> The North Carolina Supreme Court has yet to decide
> whether dismissal based on State sovereign or
> governmental immunity is a matter of personal or
> subject-matter jurisdiction. North Carolina courts
> continue to hold that "whether sovereign immunity is
> grounded in a lack of subject matter jurisdiction or
> personal jurisdiction is unsettled in North Carolina."
> M Series Rebuild, 730 S.E.2d at 257; see also Atl. Coast
> Conference v. Univ. of Md., 751 S.E.2d 612, 617 (N.C.
> Ct. App. 2013). Whether to assess the State sovereign
> immunity defense under Rule 12(b)(1) or 12(b)(2),
> however, appears to be immaterial here. See AGI Assocs.,
> LLC v. Profile Aviation Ctr., Inc., No. 5:13CV61–RLV,
> 2013 WL 4482933, at *3 (W.D.N.C. Aug. 21, 2013) (noting
> that the court could conduct jurisdictional analysis of
> State sovereign immunity under Rule 12(b)(1) or Rule
> 12(b)(2)), aff'd sub nom. AGI Assocs., LLC v. City of
> Hickory, N.C., 773 F.3d 576 (4th Cir. 2014); Collum v.
> Charlotte–Mecklenburg Bd. of Educ., No. 3:07CV534–RJC–
> DSC, 2010 WL 702462, at *6 (W.D.N.C. Feb. 23, 2010)
> (assessing State sovereign and governmental immunity
> under both Rule 12(b)(1) and Rule 12(b)(2)); Pettiford,
> 556 F. Supp. 2d at 524 n.8 ("[T]he distinction appears
> to have no impact on the method of review.").

Simmons, 122 F. Supp. 3d at 268 n.5.

will consider Moore County Defendants' Motion to Dismiss for Lack of Jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

Plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). "When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). The court may consider supporting affidavits when determining whether a plaintiff has made a prima facie showing of personal jurisdiction. See Universal Leather, 773 F.3d at 558. "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); see also Carefirst of Md., Inc., 334 F.3d at 396.

"If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of an evidentiary hearing or, when a prima facie demonstration of personal jurisdiction has been made, it can proceed 'as if it

has personal jurisdiction over th[e] matter, although factual determinations to the contrary may be made at trial.'" Simmons, 122 F. Supp. 3d at 269 (quoting Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp., 812 F. Supp. 2d 710, 717 (E.D. Va. 2011)). A plaintiff must, either at an evidentiary hearing or trial, eventually prove the existence of personal jurisdiction by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp, 416 F.3d 290, 294 n.5 (4th Cir. 2005).

**III. ANALYSIS**

Moore County Defendants first argue that Plaintiff's state tort claims should be dismissed for lack of jurisdiction by virtue of sovereign immunity. (Defs.' Reply in Supp. of Mots. to Dismiss (Doc. 30) at 9.)[2] In the alternative, Moore County Defendants argue that Plaintiff's claims should be dismissed for failure to state a claim. (Id.) Because this court concludes that Plaintiff's claims against Moore County Defendants should be dismissed for lack of jurisdiction as a result of governmental immunity, this court will not reach the motion to dismiss for failure to state a claim.

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

"In this State it is well established that counties are a part of the State government, and thus are entitled to sovereign immunity." Helsius v. Robertson, 174 N.C. App. 507, 509, 621 S.E.2d 263, 265 (2005) (citing Dawes v. Nash Cty._, 357 N.C. 442, 445, 584 S.E.2d 760, 762, reh'g denied_, 357 N.C. 511, 587 S.E.2d 417 (2003)). "Under the doctrine of governmental immunity, a county or municipal corporation 'is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.'" Estate of Williams ex rel. Overton v. Pasquotank Cty. Parks & Recreation Dep't, 366 N.C. 195, 198, 732 S.E.2d 137, 140 (2012) (citations omitted). "Governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." Id. at 199, 732 S.E.2d at 141 (citation omitted). When a municipality "engages in a proprietary function," governmental immunity does not apply. Id. Moore County Defendants contend, and Plaintiff does not contest, that the factual allegations underlying Plaintiff's Complaint constitute the exercise of governmental functions and not proprietary functions. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss for Lack of Jurisdiction ("Defs.' Mem.") (Doc. 26) at 7-11; Pl.'s Mem. of Law in Opp'n ("Pl.'s Resp.") (Doc. 29) at 11-12.)

Where governmental immunity applies, a county may not be sued unless (a) a statute authorizes such a suit or (b) it has

consented to suit or waived its immunity. Helsius, 174 N.C. App. at 509, 621 S.E.2d at 265-66; Archer v. Rockingham Cty., 144 N.C. App. 550, 554 & n.1, 548 S.E.2d 788, 791 (2001). Plaintiff contends that Moore County Defendants are amenable to suit in this case because (a) the county has a duty to abate public safety hazards under N.C. Gen. Stat. § 153A-140; (b) the county has waived immunity through its purchase of liability insurance and/or its participation in a risk pool; (c) the county has waived immunity by purchasing a bond; and (d) the county has waived immunity by settling similar actions or claims. (Pl.'s Resp. (Doc. 29) at 11-12.) This court takes up each of Plaintiff's arguments in turn.

### A. N.C. Gen. Stat. § 153A-140

Plaintiff first contends that N.C. Gen. Stat. § 153A-140 imposes a duty on the county to abate public safety hazards and because "governmental immunity does not apply where a duty is imposed on the government by statute[,]" suit is authorized against Moore County Defendants. (See Pl.'s Resp. (Doc. 29) at 11-12.) In support of this assertion, Plaintiff points to a quote included in Moore County Defendants' brief from Colombo v. Dorrity, 115 N.C. App. 81, 84, 443 S.E.2d 752, 755 (1994), which states in relevant part "[u]nless a right of action is given by statute, municipal corporations may not be held civilly liable for neglecting to perform or negligence in performing duties

which are governmental in nature." (Pl.'s Resp. (Doc. 29) at 12.) Plaintiff's argument, however, conflates two distinct principles. The first is that, as acknowledged by the excerpted quote from Colombo, a statute may expressly waive sovereign immunity and permit suit against the State and its political subdivisions. See, e.g., N.C. Ins. Guar. Ass'n v. Bd. of Trs. of Guilford Tech. Cmty. Coll., 364 N.C. 102, 107-08, 691 S.E.2d 694, 697-98 (2010). The second is that in order to state a negligence claim, the plaintiff must allege that the defendant owed a legal duty to the plaintiff. See, e.g., Inman v. City of Whiteville, 236 N.C. App. 301, 303, 763 S.E.2d 332, 334 (2014). Waiver of sovereign immunity, by statute or otherwise, is a threshold question which must be considered first and separately from the elements of the underlying claim.

Instead of pointing to a statute that purports to waive the Moore County Defendants' sovereign immunity, Plaintiff points to N.C. Gen. Stat. § 153A-140, which he contends gives the county authority over the railroad crossing in question and, in certain circumstances present in this case, imposes duties. (Pl.'s Resp. (Doc. 29) at 11-12.) No waiver of county sovereign immunity appears within the text of § 153A-140, and Plaintiff has failed to establish otherwise. See Simmons, 122 F. Supp. 3d at 270-71. Further, Plaintiff has failed to explain how, even if this

statute imposed a duty on the county, sovereign immunity would be waived.

"Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) (citation omitted). Plaintiff has failed to carry his burden of establishing that the county's sovereign immunity can be waived by virtue of § 153A-140. This court accordingly concludes, as a matter of law, that sovereign immunity has not been waived on this ground.

**B.   Waiver by Purchase of Insurance/Participation in a Risk Pool**

Plaintiff next contends that Moore County Defendants have waived immunity by purchasing liability insurance and/or by participating in a risk pool. (See Pl.'s Resp. (Doc. 29) at 11-12.) Plaintiff has not submitted any evidence in support of this assertion. Moore County Defendants have submitted a copy of Moore County's liability and property pool coverage contract[3] as an exhibit. (See generally Mot. to Dismiss for Lack of

---

[3] The policy submitted is Moore County's liability and property pool coverage contract sponsored and administered by the North Carolina Association of County Commissioners. (See Mot. to Dismiss for Lack of Jurisdiction, Ex. A attached to Aff. of Charles D. Eaton, NCACC Liability and Property Pool Coverage Contract ("Insurance Policy") (Doc. 25-2).) Participation in a risk pool is deemed to be the purchase of insurance for purposes of waiving governmental immunity. N.C. Gen. Stat. § 153A-435.

Jurisdiction, Ex. A attached to Aff. of Charles D. Eaton, NCACC Liability and Property Pool Coverage Contract ("Insurance Policy") (Doc. 25-2).) Plaintiff has neither objected to nor otherwise disputed the consideration of this policy.

N.C. Gen. Stat. § 153A-435 provides:

> Purchase of insurance pursuant to this subsection waives the county's governmental immunity, <u>to the extent of insurance coverage</u>, for any act or omission occurring in the exercise of a governmental function. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. By entering into an insurance contract with the county, an insurer waives any defense based upon the governmental immunity of the county.

N.C. Gen. Stat. § 153A-435 (emphasis added); see also Estate of Earley ex rel. Earley v. Haywood Cty. Dep't of Soc. Servs., 204 N.C. App. 338, 342-43, 694 S.E.2d 405, 409 (2010). "A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." Patrick v. Wake Cty. Dep't of Human Servs., 188 N.C. App. 592, 596, 655 S.E.2d 920, 923 (2008) (citations omitted).

As Moore County Defendants point out, the insurance policy before the court contains two provisions relevant to this inquiry. First:

**F.   Immunity**

> This section II [General Liability Coverage] of the
> Contract does not cover claims against a Covered
> Person against which the Covered Person may assert
> sovereign and/or governmental immunity in accordance
> with North Carolina law. It is the express intention
> of the parties to this Contract that the coverage
> provided in this Section of the Contract does not
> waive the entitlement of a Covered Person to assert
> sovereign immunity and/or governmental immunity.

(Insurance Policy (Doc. 25-2) at 73.) Second: "Section II of the Contract does not apply to any claim or Suit . . . [a]s to which a Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law." (Id. at 74.)

"Our courts have long followed the traditional rules of contract construction when interpreting insurance policies." Dawes v. Nash Cty., 357 N.C. 442, 448, 584 S.E.2d 760, 764, reh'g denied, 357 N.C. 511, 587 S.E.2d 417–18 (2003) (citations omitted). "If the language in an exclusionary clause contained in a policy is ambiguous, the clause is 'to be strictly construed in favor of coverage.'" Estate of Earley, 204 N.C. App. at 342, 694 S.E.2d at 409 (citation omitted). "[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." Dawes, 357 N.C. at 449, 584 S.E.2d at 764.

The North Carolina Court of Appeals has held that a similarly worded insurance policy did not waive sovereign immunity under N.C. Gen. Stat. §§ 153A-435. Estate of Earley, 204 N.C. App. at 342-43, 694 S.E.2d at 409.[4] Because the language in this contract is unambiguous that "the coverage provided . . . does not waive . . . sovereign immunity and/or governmental immunity[,]" (Insurance Policy (Doc. 25-2) at 73), the Moore County Defendants "did not waive governmental immunity from Plaintiff's claim through the purchase of the insurance policy." Estate of Earley, 204 N.C. App. at 343, 694 S.E.2d at 409.

Plaintiff has neither substantively engaged with Moore County Defendants' arguments on this point nor submitted evidence to contest the policy submitted by Moore County Defendants. Based on the uncontested evidence, this court concludes that Moore County Defendants have not waived

---

[4] The contract language considered by the North Carolina Court of Appeals in Estate of Earley provides:

> The parties to this Contract intend for no coverage to exist under Section V (Public Officials Liability Coverage) as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under North Carolina law. It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

204 N.C. App. at 342, 694 S.E.2d at 409.

governmental immunity through their purchase of insurance. See Simmons, 122 F. Supp. 3d at 270-72 ("Plaintiffs argue finally that they should be able to conduct 'at least minimal discovery' to investigate the County's involvement in the risk pool. But to do so, in light of the County's affidavit, would deprive the County of the very immunity to which it is entitled. In the absence of some reason to question the County's affidavit, Plaintiffs' request for jurisdictional discovery is denied." (citation omitted)); see also Carefirst of Md., Inc., 334 F.3d at 402 ("When a plaintiff offers only speculation or conclusory assertions . . . , a court is within its discretion in denying jurisdictional discovery.").

### C. Waiver by Purchase of a Bond

Plaintiff alleges that Moore County Defendants have waived sovereign immunity "by purchasing a bond pursuant to § 162-8[.]" (Compl. (Doc. 3) ¶ 10.) N.C. Gen. Stat. § 162-8 provides: "The sheriff shall furnish a bond payable to the State of North Carolina for the due execution and return of process, the payment of fees and moneys collected, and the faithful execution of his office as sheriff . . . ." N.C. Gen. Stat. § 162-8.

As explained by a magistrate judge in this district, "the statutory bond [required to be purchased by sheriffs under

§ 162-8 and subjecting public officers to suit under § 58-76-5][5] works as a waiver of the governmental immunity <u>of sheriffs and their deputies</u> where, as here, the surety is joined as a party." Massasoit v. Carter, 439 F. Supp. 2d 463, 485 (M.D.N.C. 2006), aff'd, 253 F. App'x 295 (4th Cir. 2007) (emphasis added) (citing Messick v. Catawba Cty., N.C., 110 N.C. App. 707, 714–15, 431 S.E.2d 489, 494 (1993)).

Moore County Defendants assert that Plaintiff cannot allege a waiver of sovereign immunity on this basis because a sheriff is not a party to this suit. (Defs.' Mem. (Doc. 26) at 13.)

---

[5] N.C. Gen. Stat. § 58-76-5 provides:

> Every person injured by the neglect, misconduct, or misbehavior in office of any register, surveyor, sheriff, coroner, county treasurer, or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State, without any assignment thereof; and no such bond shall become void upon the first recovery, or if judgment is given for the defendant, but may be put in suit and prosecuted from time to time until the whole penalty is recovered; and every such officer and the sureties on the officer's official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of that officer's office.

N.C. Gen. Stat. § 58-76-5. Plaintiff has alleged that Moore County Defendants waived sovereign immunity through the purchase of a bond pursuant to N.C. Gen. Stat. § 162-8, but the result would be the same under § 58-76-5, as no public officers were named as defendants in this case, cf. Summey v. Barker, 142 N.C. App. 688, 690-91, 544 S.E.2d 262, 265 (2001) ("Pursuant to [N.C. Gen. Stat. § 58-76], however, public officers may be sued in their official capacities.").

Plaintiff's response does not substantively engage with Moore County Defendants' arguments, but instead requests an opportunity to conduct discovery on the matter. (Pl.'s Resp. (Doc. 29) at 12.) As neither a sheriff, nor deputy, nor surety is a party in this case, this court concludes that N.C. Gen. Stat. § 162-8 cannot, even with an opportunity for further discovery, provide a basis for waiver of the Moore County Defendants' sovereign immunity as Plaintiff alleges in this case.

### D. Waiver by Settling Other Claims

Plaintiff further contends that Moore County Defendants waived sovereign immunity "by settling similar actions or claims[.]" (Compl. (Doc. 3) ¶ 10.) Moore County Defendants respond, contending that "there is no legal basis for the claim that settling other or similar claims constitutes a waiver of immunity." (Defs.' Mem. (Doc. 26) at 13.) In support of this, Moore County Defendants cite Jones v. City of Durham, 183 N.C. App. 57, 60-61, 643 S.E.2d 631, 633-34 (2007). Jones considered the plaintiff's claim that the city defendant violated the equal protection clause of the North Carolina Constitution by asserting governmental immunity as a defense to the plaintiff's claim. Id. at 59, 643 S.E.2d at 633. The Jones court ultimately found no constitutional violation and noted that, even if it

had, the city defendant would be entitled to assert sovereign immunity in that case. Id. at 64, 643 S.E.2d at 636.

Similarly, in Blackwelder v. City of Winston-Salem, 332 N.C. 319, 325, 420 S.E.2d 432, 436-37 (1992), the North Carolina Supreme Court considered a plaintiff's argument that a city defendant violated the equal protection clause of the North Carolina constitution by "pick[ing] and choos[ing] what claims it will pay[.]" The court avoided this constitutional question, reasoning that "[i]f we were to hold the City has acted unconstitutionally in the way it administers RAMCO [the corporation it organized to handle claims], it would not mean the City had waived its governmental immunity. The most we could do is strike down RAMCO." Id.

Blackwelder was construed by the North Carolina Court of Appeals in Clayton v. Branson, 170 N.C. App. 438, 613 S.E.2d 259 (2005):

> The logic of Blackwelder's holding, that a municipality's voluntary settlement with a claimant is not a waiver of governmental immunity, becomes clear when we consider the nature of settlement agreements.
>
> A settlement agreement is a contract resolving a dispute without a trial. "Whether denominated accord and satisfaction or compromise and settlement, the executed agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts."
>
> "A waiver is a voluntary and intentional relinquishment of a known right or benefit."

> Defendants assert that "[i]n settling tort claims, neither . . . the adjuster, nor the Legal Department waived governmental immunity." Plaintiff has offered no evidence of a settlement agreement whose terms contradict the defendants' contention. A waiver of governmental immunity would mean the city allowing a claimant to try his case, exposing itself to liability, and paying damages in an amount determined by a judge or jury. Plaintiff herein does not allege that the city has allowed any tort claimants to do so. In fact, plaintiff argues that the city's practice of making settlement offers in some cases is unfair precisely because the claimant must "take it or leave it" without the option of going to trial.
>
> For the reasons discussed above, we conclude that the execution of settlement contracts between a municipality and tort claimants do not constitute waivers of the affirmative defense of governmental immunity.

<u>Clayton</u>, 170 N.C. App. at 450–51, 613 S.E.2d at 268; <u>see also</u> Strong's N.C. Index 4th Municipal Corporations § 434 (2018) ("Execution of settlement contracts between a municipality and tort claimants do not constitute waivers of the affirmative defense of governmental immunity.").

Each of the aforementioned cases considers the relationship between settlement agreements and a municipality's governmental immunity, while the issue in this case is whether a county has waived governmental immunity by settling similar claims, as

Plaintiff alleges.[6] This court finds the reasoning of the North Carolina Court of Appeals in Clayton sound and to apply with equal persuasive force to the question of whether settlement agreements between counties and tort claimants constitute waivers of governmental immunity. This court finds no basis for distinguishing the case's reasoning when applied to county defendants as opposed to municipal defendants. Although Plaintiff, unlike the facts before the Clayton court, has not raised constitutional claims, Plaintiff has, similarly to the facts before the Clayton court, not alleged anything other than settlement of similar cases. As succinctly put by the Clayton court, "[a] waiver of governmental immunity would mean the city allow[ed] a claimant to try his case, exposing [the city] to liability, and paying damages in an amount determined by a judge or jury." 170 N.C. App. at 450, 613 S.E.2d at 268. In this case, Plaintiff has alleged that Moore County Defendants have "settl[ed] similar actions or claims[.]" (Compl. (Doc. 3) ¶ 10.)

---

[6] Under North Carolina law, municipalities and counties are different creatures, but substantially similar ones. "A county 'is not, in a strict legal sense, a municipal corporation, as a city or town. It is rather an instrumentality of the State, by means of which the State performs certain of its governmental functions within its territorial limits.'" Lanvale Props., LLC v. Cty. of Cabarrus, 366 N.C. 142, 150, 731 S.E.2d 800, 807 (2012) (citing Martin v. Bd. of Comm'rs of Wake Cty., 208 N.C. 354, 365, 180 S.E. 777, 783 (1935)). However, "[c]ounties, like municipalities, are creatures of the State and 'can exercise only that power which the legislature has conferred upon them.'" Wiggs v. Edgecombe Cty., 361 N.C. 318, 321, 643 S.E.2d 904, 906 (2007) (citation omitted).

This court concludes as a matter of law that, without more, an allegation that a county has settled similar claims cannot serve as a basis for finding waiver of the county's sovereign immunity.

**IV. CONCLUSION**

For the reasons set forth herein,

**IT IS HEREBY ORDERED** that Moore County Defendants' Motion to Dismiss for Lack of Jurisdiction, (Doc. 25), is **GRANTED**.

**IT IS FURTHER ORDERED** that Moore County Defendants' Motion to Dismiss for Failure to State a Claim, (Doc. 27), is **DENIED AS MOOT.**

This the 18th day of July, 2018.

/s/ William L. Osteen, Jr.
United States District Judge